IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-568-BO

| | | |
|---|---|---|
| JEFFREY WAYNE PHILLIPS,<br><br>Plaintiff,<br><br>v.<br><br>CREATIVE WEBSITE STUDIOS, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the motion for summary judgment [DE-112] filed by defendants Creative WebSite Studios and SR Telecommunications LLC ("SR Telecommunications," and collectively with Creative WebSite Studios, "defendants").[1] In support of the motion for summary judgment, defendants filed (i) a memorandum [DE-116] ("Def.'s Mem."), (ii) a statement of material facts [DE-117] ("Def.'s SMF"), and (iii) an appendix to the statement of material facts [DE-118] ("Def.'s Appx."), containing multiple exhibits [DE-118-1 to -4].

Plaintiff filed a response in opposition [DE-113] ("First Resp. in Opp.") to defendants' motion for summary judgment [DE-112]. In support of his response in oppositions, plaintiff filed (i) an opposing statement of material facts [DE-114] ("Pl.'s first SMF"), (ii) an appendix to the statement of facts [DE-115] ("Pl.'s first Appx."), (iii) a second memorandum in opposition [DE-120] ("Pl.'s Second Resp. in Opp."), (iv) a second statement of material facts in opposition [DE-121] ("Pl.'s Second SMF"), (v) a second appendix to the statement of facts in opposition [DE-122]

[1] Plaintiff listed Saira Ali as a defendant in his original complaint. *See* [DE-1]. As the court dismissed plaintiff's claims against Saira Ali on September 23, 2024, references to "defendants" for events or filings that occurred after this date only refer to Creative WebSite Studios and SR Telecommunications LLC, unless otherwise indicated. [DE-47] at 3.

("Pl.'s second Appx."), containing multiple exhibits [DE-122-1 to -17], and (vi) an additional document as a part of his second appendix [DE-123] ("Addendum to Pl.'s second Appx.").[2]

The time for filing responsive briefs has expired and the pending motion is ripe for adjudication. The motion was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). For the reasons set forth below, it is recommended that defendants' motion for summary judgment [DE-112] be denied without prejudice as untimely. The undersigned nevertheless recommends that the court sua sponte grant summary judgment on various claims and issues as provided herein.

## I. BACKGROUND

### A. Relevant procedural background

On October 11, 2023, plaintiff, proceeding *pro se*, filed a complaint against defendants Creative WebSite Studios, SR Telecommunications and Saira Ali ("Ms. Ali"). *See* [DE-1] (the "complaint"). On December 29, 2023, defendants filed a motion to dismiss. [DE-13]. Plaintiff filed his first motion to amend complaint [DE-20] on January 9, 2024, and a motion for leave to file alternative statement of claim [DE-24] on January 23, 2024.[3] On February 13, 2024, plaintiff filed his first motion for summary judgment. [DE-31].

On July 24, 2024, the undersigned entered (i) an order and memorandum and recommendation [DE-41], *inter alia*, granting plaintiff's first motion to amend complaint [DE-20] and motion for leave to file alternative statement of claim [DE-24], and recommending defendants' motion to dismiss [DE-13] be granted in part and denied in part (the "motion to dismiss

[2] Plaintiff's motion to assist with settlement negotiations [DE-125] is also before the court. The court will address this motion by separate order.

[3] Plaintiff subsequently filed multiple additional motions to amend (*see* [DE-51], [DE-80], [DE-88], [DE-89], [DE-110]) his complaint, which the court denied (see [DE-84], [DE-124]).

memorandum and recommendation"); and (ii) a memorandum and recommendation [DE-42] recommending that plaintiff's first motion for summary judgment [DE-31] be denied (the "first motion for summary judgment memorandum and recommendation").

Specifically, in the motion to dismiss memorandum and recommendation, the undersigned found that plaintiff had stated a claim for (i) fraud; (ii) obtaining property by false pretense; and (iii) breach of contract, in each case, against defendants Creative WebSite Studios and SR Telecommunications, but had failed to state a claim for extortion against any defendant or any claim against Ms. Ali. [DE-41] at 32.

Notwithstanding plaintiff's objections (*see* [DE-43; -44]), the court adopted the motion to dismiss memorandum and recommendation [DE-41] (*see* [DE-47]) and the first motion for summary judgment memorandum and recommendation [DE-42] (*see* [DE-48]). Specifically, in its September 24, 2024 order [DE-47], the court dismissed plaintiff's extortion claim and all claims against Ms. Ali, based upon a finding that Ms. Ali was an improper party to the case, but allowing plaintiff's claims for fraud, obtaining property by false pretense, and breach of contract to proceed (*see* [DE-47] at 3). On the same day, the court adopted the recommendation to deny plaintiff's first motion for summary judgment. *See* [DE-48] at 2.

On October 3, 2024, the court entered an order for discovery plan for all parties. [DE-50]. On December 16, 2024, plaintiff filed a second motion for summary judgment on his claims for fraud, obtaining property under false pretense, and breach of contract ([DE-63] at 1), which the court denied on September 30, 2025 ([DE-84] at 29; [DE-101] at 5).

On August 6, 2025, the court issued a scheduling order [DE-85], which set the discovery deadline in this case as December 1, 2025, and the dispositive motions deadline as December 30, 2025 (*id.* at 2).

On January 2, 2026, defendants Creative WebSite Studios and SR Telecommunications filed a motion for summary judgment. [DE-112]. On January 8, 2026, the court issued a notice of deficiency with respect to defendants' motion for summary judgment noting that a memorandum, statement of material facts and an appendix in support of the motion for summary judgment should have been filed in accordance with applicable Local Civil Rules. *See* Text Order January 8, 2026.

As noted above, on January 14, 2026, plaintiff filed his response in opposition to defendants' motion for summary judgment [DE-113], together with an opposing statement of material facts [DE-114] and an appendix [DE-115].

On January 16, 2026, defendants filed a memorandum in support of their motion for summary judgment [DE-116], together with a statement of material facts [DE-117] and an appendix [DE-118].

On January 29, 2026, plaintiff filed a second memorandum in opposition to defendants' motion for summary judgment [DE-120], together with a second opposing statement of material facts [DE-121], and a second appendix [DE-122]. On February 6, 2026, plaintiff filed an additional document as a part of his second appendix [DE-123]. The undersigned construes plaintiff's second memorandum in opposition to defendant's motion for summary judgment [DE-120], second opposing statement of material facts [DE-121], and second appendix [DE-122], with addendum [DE-123] as seeking to supersede his first response in opposition to [DE-113], first opposing statement of material facts [DE-114], and first appendix [DE-115], respectively. On October 2, 2025, plaintiff had filed a document titled "[p]laintiff's 26(a)(3)(A)(ii)(iii) exhibits plaintiff expects to offer at trial including exhibits list" [DE-103] ("plaintiff's trial exhibits"). As plaintiff repeatedly cites this document in support of his second statement of material facts (*see*

Pl.'s Second SMF [DE-121] at 4, 7, 9-10, 13-14), the undersigned will generously construe this filing and the exhibits therein as incorporated by reference into plaintiff's second statement of material facts and appendix thereto. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'").

**B. Relevant factual background**

As the matter is before the court on a motion for summary judgment, the court derives the facts of the case from the parties' statements of material facts, provided pursuant to Local Civil Rule 56.1, and the responses and appendices thereto.

**1. Admissibility and authenticity of exhibits**

In support of its motion for summary judgment defendants filed or refiled the following exhibits: (i) defendants' answer ([DE-118-1]; *cf. also* [DE-14]); (ii) the affidavit of Saira Ali [DE-118-2], including a telephone transcript from August 28, 2023, purportedly between plaintiff and one of defendants' representatives ("August 28 call transcript") ([DE-118-2] at 4-8); (iii) defendants' first set of interrogatories, requests for production, and requests for admission ("defendants' discovery requests") ([DE-118-3] at 1-18); (iv) a "PPSB Screening After Report for April 25, 2018" ([DE-118-3] at 24-34); and plaintiff's responses to defendants' discovery requests [DE-118-4].

**a. August 28 call transcript**

Plaintiff objects to defendants' filing of the August 28 call transcript. *See* [DE-118-3] at 19-23; Pl.'s Second SMF [DE-121] at 17. Plaintiff specifically claims that he "does not recall any phone call as defendants describe" and that "the call was generated by AI, and the affidavit of Ms. Ali was submitted in bad faith." Pl.'s Second SMF [DE-121] at 17.

Under the Federal Rules of Civil Procedure, a party must show that a fact cannot be or is

genuinely disputed by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The same rule also provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *Jones v. W. Tidewater Reg'l Jail*, 187 F. Supp. 3d 648, 654 (E.D. Va. 2016) ("[I]nstead of 'a clear, bright-line rule (all documents must be authenticated),' Rule 56(c)(2)5 now prescribes a 'multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method [of] doing so at trial.'") (quoting *Forward Magazine, Inc. v OverDrive, Inc.*, No. 10-1144, 2011 U.S. Dist. LEXIS 125373, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011)).

In her affidavit, Ms. Ali provides that she is a custodian of and familiar with defendants' business records. [DE-118-2] at 1. She further avers that "[a] true and correct copy of the transcript of [a] call [purportedly between plaintiff and a representative of defendants] is attached [to her affidavit]." *Id.* at 3.

While the transcript may represent a valid business record documenting a call to one of defendants' businesses, defendants have not definitively demonstrated that the caller was in fact plaintiff, notwithstanding the caller's representation in the transcript of the call that his name was "Jeffrey Phillips" and that his website name was "Blood Locust, Inc." [DE-118-2] at 4. Accordingly, the undersigned will not consider the call transcript, without more, as representing

evidence of a call between plaintiff and defendants on August 28, 2023.

**b. Discovery responses**

Defendants represent that on January 17, 2025, they served their First Interrogatories, First Request for Production, and First Request for Admissions ("discovery requests") on plaintiff and that plaintiff provided his discovery responses on August 7, 2025. Def.'s SMF [DE-117] at 2. As evidence of the same, defendants provide a copy of the discovery requests dated January 17, 2025, that they submitted to plaintiff (Def.'s Appx. [DE-118-3]), as well as a copy of discovery responses dated August 7, 2025, which plaintiff appears to have signed (Def.'s Appx. [DE-118-4]).

Plaintiff objects to defendants' assertions related to the discovery requests and responses on the basis that "[a]ny of the defendant's discovery as shown does not support the defendants' allegations and are irrelative and immaterial the defendants have not shown Pursuant to Fed. Civ. Rul. 56 'the absence of a genuine issue of material fact' or the 'absence of evidence to support the nonmoving party's case.'" Pl.'s Second SMF [DE-121] at 18. Plaintiff's objections appear exclusively directed towards the relevance of the facts asserted by defendants, but not the authenticity of the underlying documents or accuracy of the facts represented therein. *Cf. Summit Cmty. Bank v. David*, Civil Action No. 1:20-cv-00137 (RDA/JFA), 2022 U.S. Dist. LEXIS 17995, at *18 (E.D. Va. Feb. 1, 2022). ("Yet, [the opposing party's] concerns go to the weight of the evidence, and not its admissibility."); *Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 1000 (S.D. Cal. 2025) ("[O]bjections to the characterization, weight, or credibility of evidence, such as that [the opposing party] "[m]isstates facts" or that his statement is "[v]ague and ambiguous" are not proper evidentiary objections to evidence put forth at summary judgment.") (third and fourth alteration in original) (quoting *Salter v. Wash. Twp. Health Care Dist.*, 260 F. Supp. 2d 919, 923–24 (N.D. Cal

2003)).

Accordingly, the undersigned credits defendants' assertions regarding the timing and contents of the discovery requests and responses.

**c. Plaintiff's exhibits**

In opposition to defendants' motion for summary judgment, plaintiff's second appendix includes 130 pages of documents,[4] including summaries of the Americans with Disabilities Act ("ADA") [DE-122-1]; a one-page document discussing Federal Rule of Evidence 803(6); plaintiff's supplemental responses to defendants' interrogatories [DE-122-3]; business records including plaintiff's correspondence with defendants, email receipts, financial statements and a handwritten business chronology [DE-122-4], [DE-122-6], [DE-122-7], [DE-122-8]; an additional copy of the affidavit of Ms. Ali [DE-122-5]; information on defendants' businesses ([DE-122-6] at 5, [DE-122-8] at 2-3, [DE-122-9]); and copies of various earlier filings (*compare* [DE-122-10] *with* [DE-111], *compare* [DE-122-11] *with* [DE-104-2], *compare* [DE-122-12] *with* [DE-62-3], *compare* [DE-122-13] *with* [DE-62-4 and DE-62-5], *compare* [DE-122-14] *with* [DE-62-1], *compare* [DE-122-15] *with* [DE-13-1] and [DE-108-10], *compare* [DE-122-16] *with* [DE-62-5], *compare* [DE-122-17] *with* [DE-108-4]).

Plaintiff's addendum to his second appendix consists of additional arguments in opposition to defendants' motion for summary judgment [DE-123],[5] the Roseboro Letter addressed to plaintiff ([DE-123-1] at 1, *cf. also* [DE-119]), the scheduling order in this case ([DE-123-1] at 2-

[4] As noted above, the undersigned considers plaintiff's second appendix [DE-122] to have superseded plaintiff's first appendix [DE-115].

[5] Plaintiff raises concerns regarding document titles used in the docket. For the avoidance of doubt, the undersigned has duly considered the substance of all relevant filings regardless of the titles used for them in the docket of this case.

3, *cf. also* [DE-85]), and a copy of portions of the docket in this case [DE-123-1] at 4-5.

The trial exhibits [DE-103], which plaintiff incorporates by reference into his opposition to defendants' motion for summary judgment, largely overlap with the documents included in plaintiff's second appendix [DE-122], although they include certain business records that do not appear in second plaintiff's appendix. *See, e.g.*, [DE-103-6] at 1.

Defendants do not contest the authenticity of any of the documents submitted by plaintiff. While the court does not necessarily credit all of the inferences the parties may draw from the documents filed in support of their respective filings, the court nonetheless considers the documents to which there has been no objection, or where the objections have been rejected, for the reasons discussed above, in developing the factual record of this case.

**2. Statement of facts**

The undersigned identifies the following material facts as not being genuinely in dispute, except as otherwise noted. *Cf.* Fed. R. Civ. P. 56(f)(3). On August 24, 2021, plaintiff paid $945.00 to enter into a service agreement with Creative WebSite Studios for the website developer to create and host plaintiff's website for two years from the "go-live date." Def.'s SMF [DE-117] at 1; Pl.'s Second SMF [DE-121] at 7; Pl.'s second Appx. [DE-122-4] at 10. The invoice indicates that plaintiff worked with defendants' employee consultant Jeff Heflin, that the hosting service cost $385[6] and that the invoice reflected "one-time cost with no hidden or monthly fee." Pl.'s second Appx. [DE-122-4] at 10. On September 2, 2021, plaintiff paid $500.00 for website content writing. Def.'s SMF [DE-117] at 1; Pl.'s Second SMF [DE-121] at 7.

An email receipt from "ben@creativewebsitestudios.com" to plaintiff dated October 1,

---

[6] The website hosting service is listed for $550.00 but the entire subtotal is subject to a reduction of 30%. *See* Pl.'s Second Appx. [DE-122-4] at 10.

2021, documents plaintiff's payment of $350.00 for two years of website hosting. [DE-103-6] at 1. It is unclear how plaintiff came to pay for this service at this time. Defendants, citing only their own answer, claim in their statement of material facts that plaintiff paid this amount "to upgrade the website with new features and a better server." Def.'s SMF [DE-117] at 1. Plaintiff contests this assertion and claims that defendants have produced no evidence to support this claim. *See* Pl.'s Second SMF [DE-121] at 6; *see also* Pl.'s Second Resp. in Opp. [DE-120] at 7-8 ("Plaintiff shows [defendants' allegation that plaintiff paid $350.00 for an upgrade to the website with new features and a better server] to be untrue"). "Once the movant has made [a] threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Poquette v. Sauls*, No. 5:24-cv-01528-JDA, 2025 LX 352507, at *4-5 (D.S.C. Sep. 8, 2025) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), but "must, by affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has produced evidence to indicate that his October 1, 2021 payment of $350.00 was for two years of website hosting. [DE-103-6] at 1. Defendants have not produced any viable evidence to the contrary. Accordingly, the undersigned finds as an undisputed fact that plaintiff's October 1, 2021 payment of $350.00 was for two years of website hosting. On July 28, 2022, defendants' employee, Daniel Adams ("Mr. Adams"), head of production for Creative WebSite Studios sent plaintiff an email advising him that his website hosting had expired and directing plaintiff to "complete the renewal process, otherwise [plaintiff's] website and email accounts [would go] down." [DE-103-7].

On July 29, 2022, plaintiff paid $299.00 for three years of additional hosting. Def.'s SMF [DE-117] at 1; Pl.'s Second SMF [DE-121] at 13; Pl.'s second Appx. [DE-122-4] at 11. Specifically, the invoice is for "3 years hosting & free website maintenance with unlimited changes

till the next 3 years." Pl.'s second Appx. [DE-122-4] at 11.

The parties dispute whether defendants ever expressly requested that plaintiff sign an ADA compliance document and whether defendants required its other clients to do this. *Compare* Def.'s SMF [DE-117] at 1 ("On August 11, 2023, [SR Telecommunications] requested the [p]laintiff to sign an [ADA] compliance document, which [SR Telecommunications] did for all its clients then."); Pl.'s SMF [DE-121] at 15 ("The Plaintiff disagrees. [SR Telecommunications] never request[ed] plaintiff to sign an [ADA] compliance document and ADA does not apply to plaintiff's website."). In an email dated August 11, 2023, Mr. Adams from Creative Website Solutions advised plaintiff that defendants "got a notification from [their] Legal department that [plaintiff's] website is not ADA Compliant and this is a legal requirement of the Government." Pl.'s second Appx. [DE-122-4] at 6. Mr. Adams further represented that the "total cost for the complete process with ADA compliance plug-in customization and integration is $799 which needs to be paid so [defendants] can complete the process." *Id.* Mr. Adams requested that plaintiff get back to him "asap so [defendants] can complete this one time process for [plaintiff]." *Id.*

At some time on or after August 11, 2023, but before August 28, 2023, defendants took down plaintiff's website. *See* Def.'s SMF [DE-117] at 1-2 (call transcript from August 28, 2023, proffered by defendants indicating that plaintiff's website had already been taken down); Pl.'s Second SMF [DE-121] at 2 (plaintiff alleging that his website was taken down on August 11, 2023); Pl.'s second Appx. [DE-122-7] (plaintiff's business records indicating "website down!!!" on August 16, 2023).

As noted above, the parties disagree on whether plaintiff called defendants on August 28, 2023, and defendants have not produced definitive evidence that the caller recorded in the transcript is plaintiff. *Compare* Def.'s SMF [DE-117] at 1-2 *with* Pl.'s Second SMF [DE-121] at

15-17 ("Plaintiff does not recall any phone call as defendants describe.").

Defendants allege that on January 17, 2025, they served their First Interrogatories, First Request for Production, and First Request for Admissions on plaintiff and that plaintiff provided his discovery responses on August 7, 2025. Def.'s SMF [DE-117] at 2.

In the discovery requests, defendants request that plaintiff provide various information "[r]egarding every governmental contract that [plaintiff], Blood Locust, Inc. or Blood Locust Inc LLC have entered into since 2019." [DE-118-3] at 6. In response to this query, plaintiff responds "this is not a question," objects generally on the grounds of relevance, admissibility and privacy and then concludes "I do not have any such documents in my possession." [DE-118-4] at 9.

## II. APPLICABLE LEGAL STANDARDS

"Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Kennedy v. Abbott Lab'ys, Inc.*, No. 5:21-CV-199-D, 2023 WL 1458073, at *3 (E.D.N.C. Feb. 1, 2023) (first citing Fed. R. Civ. P. 56(a); then citing *Scott v. Harris*, 550 U.S. 372, 378, 380 (2007); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). The party moving for summary judgment must initially show "the absence of a genuine issue of material fact" or the "absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party has met this initial burden, "the nonmoving party may not rest on the allegations or denials in its pleading," *Kennedy*, 2023 WL 1458073, at *3 (citing *Anderson*, 477 U.S. at 248–49), but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). When evaluating a motion for summary judgment, a trial court must determine whether a genuine issue of material

fact exists for trial. *See Anderson*, 477 U.S. at 249. In making this determination, the court must "view the facts and draw reasonable inferences in the light most favorable to the [nonmoving] party." *Harris*, 550 U.S. at 378 (quotation omitted).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position [is] insufficient . . . ." *Id.* at 252; *see Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *See Anderson*, 477 U.S. at 248.

## III. DISCUSSION

In its order on defendants' motion to dismiss, the court allowed plaintiff's claims for fraud, obtaining property by false pretense, and breach of contract to proceed.[7] [DE-47] at 3. Defendants' position on summary judgment consists almost entirely of arguments that plaintiff is not entitled to damages related to any of his claims.[8] *See* [DE-116] at 2-5.

### A. Timeliness of motion for summary judgment

Plaintiff correctly claims in his second response in opposition [DE-120] that defendants

[7] To the extent plaintiff seeks a claim for intentional infliction of emotional distress, (*see* Pl.'s Second Resp. in Opp. (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)), the undersigned finds no such claim to be before the court.

[8] Defendants provide conclusory arguments that "[t]he Affidavit of Saira Ali shows that the Plaintiff repudiated the contract by refusing to respond to repeated requests for information" ([DE-116] at 2) and that plaintiff's fraud allegations lack the requisite particularity (*id.* at 4), yet they nowhere develop these arguments. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop [its] argument—even if [its] brief takes a passing shot at the issue.") (alterations in original); *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

filed their motion for summary judgment after the time to do so had expired. The court's scheduling order set the dispositive motions deadline as December 30, 2025. [DE-85] at 2. Defendants did not file their motion for summary judgment until January 2, 2026. [DE-112].

Federal Rule of Civil Procedure 6(b)(1)(B) provides that "[w]hen an act . . . must be done within a specified time, the court may, for good cause, extend the time . . . with [a] motion . . . before the original time or its extension expires; or . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(A)-(B).

Defendants have not filed a motion to extend deadlines or otherwise provided any explanation on why their motion for summary judgment was not filed before the dispositive motions deadline.

"'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). "[B]oth persuasive and binding precedent weigh heavily against a party whose only excuse is a misreading of the law or a busy work schedule." *United States v. Chujoy*, 207 F. Supp. 3d 660, 666 (W.D. Va. 2016) (citing *United States v. Cates*, 716 F.3d 445, 449 (7th Cir. 2013)). Yet here, defendants provide no explanation for the untimeliness of their motion. Accordingly, the court does not find that defendants have demonstrated excusable neglect for missing the dispositive motions deadline.

Yet the Fourth Circuit has noted "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *see also Sansotta v. Town of Nags Head*, 724 F.3d 533, 547 (4th Cir. 2013) (noting a "strong preference for deciding cases on the merits"). The Fourth Circuit has also recognized that a district court has the ability to grant summary judgment *sua sponte*, provided the parties are provided "notice that [they] had to come forward with all of [their] evidence." *Moore v. Equitrans,*

*Ltd. P'ship*, 27 F.4th 211, 224 (4th Cir. 2022) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Karp v. First Conn. Bancorp, Inc.*, 69 F.4th 223, 230 (4th Cir. 2023) ("Under Federal Rule of Civil Procedure 56(f), for example, a court may grant summary judgment *sua sponte* after giving parties 'notice and a reasonable time to respond.'"). Having considered the instant motion for summary judgment and the accompanying material, as well as plaintiff's responsive filings, and having "identif[ied] for the parties material facts that may not be genuinely in dispute," the undersigned RECOMMENDS that the court proceed under Federal Rule of Civil Procedure 56(f) to consider and grant summary judgment independent of the motion, as describe herein. *Cf.* Fed. R. Civ. P. 56(f).

In this case, plaintiff has filed not just one, but two sets of responses in opposition, statements of material facts and appendices in response to defendants' motion for summary judgment. *See* "First Resp. in Opp." [DE-113]; "Pl.'s first SMF" [DE-114]; "Pl.'s first Appx." [DE-115]; "Pl.'s Second Resp. in Opp." [DE-120]; "Pl.'s Second SMF" [DE-121]; "Pl.'s second Appx." [DE-122]; "Addendum to Pl.'s second Appx." [DE-123]. Accordingly, plaintiff had sufficient notice and ability to respond to defendants' motion for summary judgment, notwithstanding its untimeliness.

Additionally, courts have found that the ability to object to a magistrate judge's recommendation satisfies the requirement for notice and fairness to the parties on dispositive issues. *See Kokinda v. Foster*, No. 3:21-cv-00154, 2024 U.S. Dist. LEXIS 29802, at *4 (N.D.W. Va. Feb. 21, 2024) ("Fair procedure requires nothing more than notice of the potential dismissal and an opportunity to respond. . . . So where, as here, the matter is referred to a Magistrate Judge for a recommended disposition, the Magistrate Judge can. . . . recommend *sua sponte* dismissal because the plaintiff will have an opportunity to object and thus respond.") (citing *Robertson v.*

*Anderson Mill Elementary Sch.*, 989 F.3d 282, 291 (4th Cir. 2021)); *see also Buchanan v. JumpStart S.C.*, No. 1:21-cv-00385-DCN-SVH, 2022 U.S. Dist. LEXIS 25925, at *15 n.6 (D.S.C. Feb. 14, 2022) ("[T]he court notes it may *sua sponte* dismiss these claims, [because] the R&R recommended dismissal of these claims, so, at the very least, Buchanan had the notice and opportunity to respond in the form of his objection to the R&R."); *Shivers v. IBEW Local Union 349*, 262 F. App'x 121, 127 (11th Cir. 2008) (finding that a district court properly granted summary judgment *sua sponte* when it provided the parties with adequate notice by allowing them to object to the magistrate judge's recommendation to *sua sponte* grant summary judgment.).

Accordingly, the undersigned finds that all parties have had, or presently have with the filing of this memorandum and recommendation, sufficient notice and reasonable time to respond.

**B. Fraud**

"[F]raud that induces contractual relations may be claimed in addition to a breach of contract." *Riggs v. Orkin, Inc.*, No. 7:11-CV-5-D, 2011 WL 2417016, at *3 (E.D.N.C. June 13, 2011) (citing *Food Lion, LLC v. Schuster Mktg. Corp.*, 382 F. Supp. 2d 793, 800-01 (E.D.N.C. 2005)).

Under North Carolina law, a plaintiff must prove five elements in a claim for actual fraud: "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 798 (E.D.N.C. 2019) (gathering cases), *aff'd sub nom.*, *Fitzgerald Fruit Farms, LLC v. Harris*, 858 F. App'x 625 (4th Cir. 2021). The intent requirement for fraud "embraces both knowledge and an intent to deceive, manipulate or defraud." *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988) (citing Black's Law Dictionary 1207 (5th ed. 1979)). Yet a

"plaintiff's reliance on any misrepresentations must be reasonable." *RD & J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 744–45, 600 S.E.2d 492, 498 (2004) (citing *State Properties, LLC v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002), *disc. review denied*, 356 N.C. 694, 577 S.E.2d 889 (2003)).

As noted above, plaintiff paid $55.00 on August 24, 2021, to enter into a service agreement with Creative WebSite Studios for the website developer to host plaintiff's website for two years from the "go-live date." Def.'s SMF [DE-117] at 1; Pl.'s Second SMF [DE-121] at 7; Pl.'s second Appx. [DE-122-4] at 10. An email receipt from "ben@creativewebsitestudios.com" to plaintiff dated October 1, 2021, documents plaintiff's payment of $350.00 for two years of website hosting. [DE-103-6] at 1. On July 28, 2022, defendants' employee, Mr. Adams, sent plaintiff an email advising him that his website hosting had expired and inviting plaintiff to "complete the renewal process, otherwise [plaintiff's] website and email accounts [would go] down" ([DE-103-7]), which led plaintiff to pay $299.00 for three years of additional hosting. Def.'s SMF [DE-117] at 1; Pl.'s Second SMF [DE-121] at 13; Pl.'s second Appx. [DE-122-4] at 11.

Mr. Adams July 28, 2022 email falsely represents that defendants' hosting of plaintiff's website had expired when it had not in fact. [DE-103-7]. The evidence therefore supports that defendants made a false representation of a material fact. The evidence appears to suggest that plaintiff relied on these representations as evidenced by the fact that plaintiff agreed to pay a redundant or premature hosting fee, which also shows that these misrepresentations resulted in injury to plaintiff. Pl.'s second Appx. [DE-122-4] at 10. Yet plaintiff must show that this reliance was reasonable. *See RD & J Props.*, 165 N.C. App. at 744–45, 600 S.E.2d at 498.

"[T]o establish justifiable reliance a plaintiff must sufficiently allege that he made a reasonable inquiry into the misrepresentation and allege that he 'was denied the opportunity to

investigate or that he could not have learned [... the true facts] by exercise of reasonable diligence.'" *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 454, 781 S.E.2d 1, 11 (2015) (second alteration in original) (quoting *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 369, 760 S.E.2d 263, 267 (2014)). North Carolina courts have held that reliance on a misrepresentation is not reasonable where the allegedly injured party possessed "the information[, which] . . . plainly contradicted the alleged misrepresentations and omissions about which [the allegedly injured party] complain[s]."[9] *Atkinson v. Lackey*, No. 12 CVS 7600, 2015 WL 867181, at *15 (N.C. Super. Feb. 27, 2015); *Sullivan v. Mebane Packaging Grp., Inc.*, 158 N.C. App. 19, 27, 581 S.E.2d 452, 459 (2003) (finding that a plaintiff had not reasonably relied on alleged misrepresentations of rights under an agreement, where the plaintiff had access to relevant language from the agreement."); *L'Heureux Enters., Inc. v. Port City Java, Inc.*, No. 06 CVS 3367, 2009 WL 4644629, at *4 (N.C. Super. Sept. 4, 2009) ("Reliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate, . . .; or if the plaintiff was informed of the true condition of the subject matter.") (internal citations omitted). Here, the receipts evidencing the inaccuracy of defendants' representations were in plaintiff's possession as the recipient of the relevant emails. Pl.'s second Appx. [DE-122-4] at 10; Pl.'s second Appx. [DE-122-4] at 11. Accordingly, plaintiff's reliance on defendants' misrepresentations were not reasonable. If the evidence taken in the light most favorable to the non-moving party, "effectively refutes even one element [of a claim for fraud],

[9] "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *L'Heureux Enters., Inc. v. Port City Java, Inc.*, No. 06 CVS 3367, 2009 WL 4644629, at *4 (N.C. Super. Sept. 4, 2009) (citing *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 513 S.E.2d 320 (1999)).

summary judgment is proper." *Keyzer v. AmerLink, Ltd.*, No. COA04-1095, 2005 N.C. App. LEXIS 1729, at *7 (Ct. App. Aug. 16, 2005) (quoting *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 745, 600 S.E.2d 492, 498 (2004)). Accordingly, it is appropriate to grant summary judgment for defendants as to plaintiff's claim for fraud based on defendants' representations concerning the hosting fees for plaintiff's website.

Plaintiff also attempts to assert fraud claims related to defendants' use of and plaintiff's interactions with various business entities in the course of their respective dealings. *See* [DE-24] ("Defendant, creative website studios, has a history of defrauding . . . using other business, such as Defendant, SR Telecommunications who sold 3yr hosting and Maintenance plan, . . . while diverting payment to vital designing, so that the defendant, creative website studios can now deny any maintenance plan exists."). The court has previously found that plaintiff has failed to state a claim associated with any such allegations as "Plaintiff . . . does not allege what injury he suffered as a direct result of defendants' use of, or plaintiff's interactions with, diversely named businesses or business entities." [DE-124] at 12.

Plaintiff also appears to attempt to assert fraud claims connected to defendants' representations that his website was required to comply with the ADA, specifically arguing that the maintenance he paid for should have covered this. *See* Second Resp. in Opp. [DE-120] at 4 ("Defendant's representative Daniel Adams, described as ADA Rules, applies to business open to the public [(sic)][;] . . . Plaintiff contends this action was reasonably calculated to deceive shows intent to deceive [(sic)]."). First, plaintiff never claims that he was ever deceived by defendants' representations regarding his need for ADA compliance and therefore lacks a necessary element of a fraud claim. *See generally* [DE-20], [DE-24]. Second, while defendants' misinterpretation of the ADA is sufficient to sustain a breach of contract claim, it is insufficient to support a fraud

claim, which generally cannot be based on a question of law. *See Dalton v. Dalton*, 164 N.C. App. 584, 586, 596 S.E.2d 331, 333 (2004) ("[A] party cannot attack the making of a contract on the basis of fraud where the proof regarding the misrepresentation or misstatement relates to a matter of law.").

In sum, the undersigned RECOMMENDS that the court *sua sponte* GRANT summary judgment for defendants on all of plaintiff's claims for fraud.[10]

**C. Obtaining property by false pretense**

N.C.G.S. § 14–100 makes obtaining property by false pretense a criminal offense. N.C.G.S. § 1–538.2(a) provides civil liability for various criminal offenses, including obtaining property by false pretense under § 14–100. N.C.G.S. § 1–538.2(c) further provides that "[a]n action may be brought under this section regardless of whether a criminal action is brought or a criminal conviction is obtained for the act alleged in the civil action." The statute finally provides that "[n]othing contained in this act shall prohibit recovery upon any other theory in the law." N.C.G.S. §1–538.2(d).

"The essential elements of a claim of obtaining property by false pretenses consist of the following: '(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another.'" *Seelig v. Solomon*, No. 5:16-HC-2030-FL, 2017 WL 829336, at *5 (E.D.N.C. Mar. 2, 2017) (quoting *State v. Cronin*, 262 S.E.2d 277, 286 (N.C. 1980)).

As discussed above, Mr. Adams' July 28, 2022 representation that defendants' hosting of

[10] As the undersigned recommends summary judgment against plaintiff's fraud claim, there is also no basis for plaintiff's claim of emotional damages based on fraud. *See* Pl.'s Second Resp. in Opp. [DE-120] at 11.

plaintiff's website had expired was false. [DE-103-7]. Defendants' receipt to plaintiff dated August 24, 2021, documents that defendants would host plaintiff's website for two years from the "go-live date." Pl.'s second Appx. [DE-122-4] at 10. The receipts also show that plaintiff was deceived, as evidenced by the fact that he paid the premature or redundant fee. Pl.'s second Appx. [DE-122-4] at 10. Defendants obtained value from plaintiff by him prematurely paying a fee that was not then due. Pl.'s second Appx. [DE-122-4] at 10.[11]

Yet plaintiff has not produced any evidence that could reasonably be construed by a jury as evidencing that Mr. Adams' misrepresentation was a result of an intent to deceive rather than a simple mistake. In particular, the undersigned notes that plaintiff's receipts came from three different defendants employees (Pl.'s second Appx. [DE-122-4] at 10-11; [DE-103-6] at 1), which further weighs in favor of a finding of mistake rather than intent to mislead in defendants' dealings with plaintiff.

Accordingly, the undersigned RECOMMENDS that the court *sua sponte* GRANT summary judgment for defendants on plaintiff's claim for obtaining property by false pretense.

**D. Breach of contract**

**1. Liability**

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).

Neither party contests that plaintiff validly entered into a contract with Creative WebSite Studios. *See* Def.'s SMF [DE-117] at 1; Pl.'s Second Resp. in Opp. [DE-120] at 2. On August

[11] While defendants concede that plaintiff is "due a refund for future hosting" ([DE-13-1] at 1-2), there is no evidence that any money has been returned to plaintiff as of the date of his complaint or any of his amended complaints.

24, 2021, plaintiff paid Creative WebSite Studios $385.00[12] to secure the hosting of plaintiff's website for two years from the "go-live date." Def.'s SMF [DE-117] at 1; Pl.'s Second SMF [DE-121] at 7; Pl.'s second Appx. [DE-122-4] at 10. Neither party indicates the "go-live date" but it could not have been any earlier than on August 24, 2021. Pl.'s second Appx. [DE-122-4] at 10. As noted above, on October 1, 2021, plaintiff paid $350.00 for two years of website hosting. [DE-103-6] at 1. On July 29, 2022, plaintiff paid $299.00 for three years of additional hosting. Def.'s SMF [DE-117] at 1; Pl.'s Second SMF [DE-121] at 13; Pl.'s second Appx. [DE-122-4] at 11. Accordingly, plaintiff cumulatively purchased seven years of website hosting beginning no earlier than August 24, 2021.

Defendants took plaintiff's website down on or after August 11, 2023, but before August 28, 2023. *See* Def.'s SMF [DE-117] at 1-2 (call transcript proffered by defendants indicating that plaintiff's website had already been taken down); Pl.'s Second SMF [DE-121] at 2 (plaintiff alleging that his website was taken down on August 11, 2023).

Accordingly, defendants' ceased hosting plaintiff's website prior to the end of the period plaintiff had paid defendants to host his website. In their answer to plaintiff's original complaint, defendants claim that "[b]ecause . . . plaintiff has terminated his contract, he is due a refund for future hosting." [DE-14] at 4.

Defendants argue that "[p]laintiff repudiated the contract by refusing to respond to repeated requests for information." Def.'s Mem. [DE-116] at 2. Yet defendants have not provided any evidence of such "repeated requests for information" beyond the general statement in Ms. Ali's affidavit that "[w]e called him and emailed him" about ADA compliance. Def.'s Appx. [DE-118-

[12] The website hosting service is listed for $550.00 but the entire subtotal is subject to a reduction of 30%. *See* Pl.'s Second Appx. [DE-122-4] at 10.

2] at 2. Defendants elsewhere represent that they removed plaintiff's website, because he failed to accept defendants' requirement that plaintiff pay for an ADA plug-in. [DE-117] at 1 ("When the [p]laintiff refused to sign the [ADA compliance] document, [defendants] took the [plaintiff's] sight [sic] down."). "A party's compliance with regulations can constitute a term of an otherwise valid contract." *Mullen v. Saber Healthcare Grp., LLC*, No. 5:18-cv-317-BO, 2020 U.S. Dist. LEXIS 159334, at *16 (E.D.N.C. Aug. 31, 2020) (citing *Sanders v. State Pers. Comm'n*, 197 N.C. App. 314, 321-22, 677 S.E.2d 182 (2009)).

Title III of the ADA defines commerce to include: "travel, trade, traffic, commerce, transportation, or communication—(A) among the several States; (B) between any foreign country or any territory or possession and any State; or (C) between points in the same State but through another State or foreign country." 42 U.S. Code § 12181(1). It further provides that certain private entities will be considered "public accommodations" under the ADA "if the operations of such entities affect commerce [including] . . . a . . . sales or rental establishment; [or] a . . . service establishment." 42 U.S. Code § 12181(7)(E)-(F). The Supreme Court has explained that "[t]he phrase 'public accommodation' is defined in terms of 12 extensive categories, which the legislative history indicates 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676-77, 121 S. Ct. 1879, 1890 (2001).

Yet Title III of the ADA does "not apply to private clubs or establishments exempted from coverage under [T]itle II of the Civil Rights Act of 1964 (42 U.S.C. 2000-a(e) ['Title II of the CRA']." 42 USCA § 12187. Title II clarifies that private clubs or other establishments are those that are "not in fact open to the public." 42 U.S. Code § 2000a(e).

Courts across the nation are divided on whether websites are places of public

accommodation subject to the requirements of the ADA. *Compare Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England*, Inc., 37 F.3d 12, 19 (1st Cir. 1994) ("It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not. Congress could not have intended such an absurd result."); *Nat'l Ass'n of the Deaf v. Netflix*, *Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) ("In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would run afoul of the purposes of the ADA.") (quoting *Carparts Distribution Ctr., Inc.*, 37 F.3d at 20); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 907 (9th Cir. 2019) ("[A]t least since 1996, Domino's has been on notice that its online offerings must effectively communicate with its disabled customers and facilitate 'full and equal enjoyment' of Domino's goods and services."); *with Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 407 (S.D.N.Y. 2024) ("The Court finds that places of public accommodation do not extend beyond physical locations to standalone websites.").

The Fourth Circuit has not yet considered whether commercial websites represent public accommodations for purposes of Title III of the ADA, yet another court in this circuit found that a public official's social media page was not subject to Title III when the online posting did not involve commercial activity. *Zajac v. Jordan*, No. CV DLB-22-1620, 2023 WL 2743363, at *7 (D. Md. Mar. 31, 2023), *aff'd*, No. 23-1480, 2023 WL 5527846 (4th Cir. Aug. 28, 2023).

Similar to the court in *Zajac,* the court, here, need not opine on whether all commercial websites are subject to the requirements of Title III of the ADA, because certain characteristics of plaintiff's website show that it was not a place of public accommodation.

The Ninth Circuit provided helpful analysis on the question of whether a private entity is a public accommodation under Title III of the ADA. In *Langer v. Kiser*, the Ninth Circuit read 42

U.S.C. § 12187 and Title II of the CRA together to mean that "any private entity or facility 'not in fact open to the public,' is also exempt from Title III of the ADA." 57 F.4th 1085, 1102 (9th Cir. 2023). To determine whether a private entity is open or closed to the public, the Ninth Circuit relied on evidence of "the actual usage of the facility in question" and absent any such evidence, "considerations such as the nature of the entity and the facility, as well as the public's reasonable expectations regarding use of the facility." *Id.*

Here, all available evidence shows that plaintiff's website was not "open to the public" and therefore subject to the requirements of Title III of the ADA. The public had no reasonable expectation of nor benefit from accessing plaintiff's website, which was solely directed at providing information to the United States Federal Government. Pl.'s Second Resp. in Opp." [DE-120] at 2. Even taking the evidence in the light most favorable to defendants, they cite no evidence to suggest that plaintiff's website was actually used or was reasonably expected to be used by the public. *Cf.* Def.'s Mem. [DE-116] at 2 ("Because the [p]laintiff received no visitors per day and did not check his computer for about 6 months, he cannot show that he was damaged by his website being down for a few days.").

As plaintiff's website was not subject to Title III of the ADA, defendants had no legal basis to require that he comply with such requirements. By removing plaintiff's website before the end of the paid for hosting period, defendants breached their contract with plaintiff. Accordingly, the undersigned RECOMMENDS that the court *sua sponte* GRANT summary judgment for plaintiff on his breach of contract claim with respect to liability.

**2. Damages**

**a. Direct damages**

As noted above, defendants concede that "[b]ecause . . . plaintiff has terminated his

contract, he is due a refund for future hosting." [DE-14] at 4. Plaintiff has submitted evidence, which defendants have not contradicted that he paid $1,034.00 for a total of seven years of hosting on August 24, 2021, September 1, 2021[13] and July 29, 2022. Pl.'s second Appx. [DE-122-4] at 10-11; [DE-103-6] at 1. Accordingly, defendants owe plaintiff the proportion of this sum that was not utilized in hosting plaintiff's website. As the parties do not provide definitive evidence of when plaintiff's website went live or when it was taken down, additional evidence is needed to compute the exact figure.

**b. Consequential damages**

Plaintiff additionally claims consequential damages in the amount of $37,000,000.00. Pl.'s Second Resp. in Opp. [DE-120] at 11 ("Plaintiff claims a valid business expectancy loss of as much as 300 million to my company, and a personal loss of executive compensation as much as 15 million in 2023.").

In a breach of contract action under North Carolina law "the damages recoverable . . . are those that 'naturally flow from the breach, and such special or consequential damages as are reasonably presumed to have been within the contemplation of the parties at the time they made the contract, as the probable result of a breach of it.'" *Blis Day Spa, LLC v. Hartford Ins. Grp.*, 427 F. Supp. 2d 621, 638 (W.D.N.C. 2006) (quoting *A.F. Johnson & Son v. Atl. Coast Line R. Co.*, 53 S.E. 362, 364 (1906)). "Whether special damages arising from the breach of a contract may be regarded as 'within the contemplation of the parties,' and therefore recoverable, would depend upon the information communicated to or the knowledge of the parties at the time and the reasonable foreseeability of such damages." *Id.* (quoting *Stanback v. Stanback*, 297 N.C. 181, 254

[13] Defendants argue that the September 1, 2021 payment was "to upgrade the website with new features and a better server" ([DE-117] at 1), yet the receipt evidencing the September 1, 2021 payment does not document any such upgrades, nor have defendants produced any other evidence supporting their position.

S.E.2d 611 (1979)). On this question, the North Carolina Supreme Court has looked to the Restatement of Contracts, which provides that:

> Foreseeability of harm as a Requisite for Recovery. In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury.

*Stanback*, 297 N.C. at 187, 254 S.E.2d at 616 (quoting Restatement of the Law of Contracts, § 330, p. 509), *disapproved of on other grounds by Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981), *and disapproved of on other grounds by Owens v. Dixie Motor Co.*, No. 5:12-CV-389-FL, 2014 WL 12703392 (E.D.N.C. Mar. 31, 2014).

Here, plaintiff claims that defendants were aware that he "was soliciting [U.S. government contracts] . . . [a]nd the likelihood of a contract was more than likely." Pl.'s Second Resp. in Opp. [DE-120] at 13. Yet plaintiff has cited no evidence supporting the likelihood of him winning a bid for a government contract aside from the fact that he bid for it. Plaintiff has also not cited any evidence to show that defendants should have been aware that plaintiff was likely to win a significant government contract beyond the fact that they knew he was bidding on government contracts.

The North Carolina Supreme Court has held that "lost future profits are difficult for a new business to calculate and prove, [but] we are persuaded that there should be no per se rule against the award of such damages where they may be shown with the requisite degree of certainty." *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 546, 356 S.E.2d 578, 585 (1987). A North Carolina Court of Appeals has opined that "damages may be established with *reasonable certainty* with the aid of expert testimony, economic and financial data, market surveys and analysis, and

business records of similar enterprises." *Iron Steamer, Ltd. v. Trinity Rest., Inc.*, 110 N.C. App. 843, 849, 431 S.E.2d 767, 771(1993) (citing 22 Am.Jur.2d § 627 (1988)).

Plaintiff alleges that "the likelihood of a contract was more than likely." Pl.'s Second Resp. in Opp. [DE-120] at 10. Specifically, plaintiff claims that his "business records . . . show plaintiff's prospective loss of Government contracts and plaintiff's loss of opportunity to submit bids for Government contracts." *See* Pl.'s second Appx. [DE-122-7] at 2. Plaintiff's "business records" appear to consist of a six page handwritten chronology of his business activities beginning with plaintiff filing his articles of organization with the North Carolina Secretary of State on January 24, 2021, and ending with plaintiff's filing of articles of dissolution on December 12, 2023. *Id.* at 5-10. In this summary, plaintiff does not document any revenue, the awarding of any contracts or any expressions of interests in his business by any potential clients. *See id.*

Plaintiff claims that "[t]he contract for security services at the U.S. Embassy in Baghdad was awarded to GardaWorld for $1.2 billion" and that "[t]he U.S. had **$1.71 billion** in open contract obligations related to Afghanistan as of March 2022." *Id.* at 3. Plaintiff also notes that "[a]s of 2023, the average annual income for a CEO in the United States is approximately **$17.7 million**." *Id.*

Plaintiff then states that

> [he] feel[s] confident [he] could have made a bid for this contract for Iraq, based on [his] personal knowledge, research, surveillance and Reconnaissance's, logistics and support network [and] that [he] would have been awarded this contract with a bid of 1 billion USD, and have a loss of as much as 300, million to [his] company, and a personal loss of executive compensation as much as 15 million in 2023.

*Id.* at 4.

Plaintiff's "confiden[ce]" and "business records" do not appear to represent anything more than "hypothetical or speculative forecasts," which have been found insufficient to satisfy the

"reasonable certainty" required for recovery of lost profits. *See McNamara v. Wilmington Mall Realty Corp*, 121 N.C. App. 400, 407–08, 466 S.E.2d 324 (1996) (citing *Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 87 N.C. App. 438, 446, 361 S.E.2d 608, 613 (1987)).

Plaintiff has provided no expert testimony in support of his alleged lost profits. *See* Pl.'s second Appx. [DE-122-7]. To the extent plaintiff argues that GardaWorld's U.S. Embassy contract in Baghdad and the size of the open contract for the embassy in Afghanistan represents "economic and financial data, market surveys and analysis, and business records of similar enterprises," *Iron Steamer, Ltd.*, 431 S.E.2d at 771, plaintiff has not provided any information on how the characteristics of his business would be competitive in markets that he cites, nor does he provide any evidence of similarities between his business and GardaWorld except that they both are seeking business in the same region. Plaintiff provides no evidence of his "personal knowledge, research, surveillance and Reconnaissance's, logistics and support network," nor does he explain what in his knowledge and experience would equip him to run a business capable of fulfilling multi-million dollar contracts or how defendants knew this information. Notably, plaintiff provides no evidence that he employed any individuals besides himself, secured any licenses or had any equipment beyond possibly "office supplies," a "printer" and a "computer." *See* Pl.'s Second Appx. [DE-122-7] at 10. Plaintiff claims that the average annual income for a CEO in the United States is approximately $17.7 million, yet plaintiff provides no evidence that his business was comparable in size or profitability to the businesses run by CEOs earning the average executive income. Pl.'s second Appx. [DE-122-7] at 2.

In the discovery requests, defendants request that plaintiff provide various information "[r]egarding every governmental contract that [plaintiff], Blood Locust, Inc. or Blood Locust Inc LLC have entered into since 2019." [DE-118-3] at 6. In response to this query, plaintiff responds

"this is not a question," objects generally on the grounds of relevance, admissibility and privacy and then concludes "I do not have any such documents in my possession." [DE-118-4] at 9.

While plaintiff appears to attempt to supplement this response in his supplemental response to defendants' interrogatories, his supplemental response also does not provide any evidence that he ever successfully entered into a government contract. *See* [DE-122-3] at 12. Recovery of damages for recovery of future lost profits or other consequential damages is not appropriate on the facts of this case. Accordingly, the undersigned RECOMEMNDS that the court *sua sponte* GRANT summary judgment for defendants on the issue of damages for recovery of future lost profits or other consequential damages.

**c. Punitive damages**

"[P]unitive damages are available under North Carolina law upon a showing of fraud." *Crutchfield v. ImmunoScience, Inc.*, No. 1:08CV561, 2012 WL 263396, at *3 (M.D.N.C. Jan. 30, 2012), *report and recommendation adopted*, No. 1:08CV561, 2012 WL 1077450 (M.D.N.C. Mar. 30, 2012). Yet absent an identifiable tort or a contract to marry, [i]t is a general rule in North Carolina that punitive damages are not allowed for breach of contract." *von Hagel v. Blue Cross & Blue Shield of N. Carolina*, 91 N.C. App. 58, 61, 370 S.E.2d 695, 698 (1988).

As the undersigned has recommended above that the court *sua sponte* GRANT summary judgment for defendants on plaintiff's fraud claims, an award of punitive damages is not appropriate on the facts of this case. Accordingly, the undersigned RECOMMENDS that the court *sua sponte* GRANT summary judgment for defendants on the issue of punitive damages.

## IV. FAILURE TO FILE NOTICE OF APPEARANCE

On March 25, 2026, the court entered an order ([DE-124] at 17), *inter alia*, granting defendants' counsel's motion to withdraw [DE-107]. In such order, the court directed the relieved

counsel [to] serve a copy of this order on defendants no later than April 3, 2026. [DE-124] at 18. The court also directed defendants to "cause new counsel to file a notice of appearance on their behalf no later than April 24, 2026." *Id.* at 18. As of the date of this Memorandum and Recommendation, no counsel has filed a notice of appearance on behalf of defendants. The undersigned notes that defendants will be unable to file any (i) objections to the instant Memorandum and Recommendation or (ii) responses to objections, without an attorney filing a notice of appearance on their behalf and filing objections or responses to objections, respectively, during the time provided in greater detail below.

In addition, the court notes that ""a party who fails to . . . cause a new attorney to file a notice of appearance may be subject to sanctions." *See* Local Civil Rule 5.2(e). Additionally, a party may be subject to additional sanctions for failure to follow court orders. *Oyeneyin v. Bracey*, No. 5:20-CV-503-FL, 2021 WL 6118664, at *2 (E.D.N.C. Dec. 27, 2021) ("[S]anctions are appropriate for plaintiff's failure to comply with the court's order."); Neil v. Warren Cnty. Bd. of Educ., No. 5:20-CV-595-FL, 2023 WL 6990468, at *2 (E.D.N.C. Oct. 23, 2023) (dismissing, *inter alia*, "as a sanction for failure to follow the court's order"), *aff'd*, No. 24-1137, 2025 WL 1682727 (4th Cir. June 16, 2025).

## V. CONCLUSION

For the reasons stated above, it is RECOMMENDED that the court enter an order as follows:

1. Defendants' motion for summary judgment [DE-112] is DENIED as untimely.

2. Pursuant to Fed. R. Civ. P. 56(f), the court:

   a. GRANTS summary judgment for defendants on:

      i. all of plaintiff's fraud claims;

ii. plaintiff's claim for obtaining property by false pretense;

iii. the issue of consequential damages; and

iv. the issue of punitive damages;

b. GRANTS summary judgment for plaintiff on his claim for breach of contract; and

c. as the only remaining matter in this case consists of direct damages from the breach of contract, up to a maximum of $1,034.00, both parties are DIRECTED, within 7 days of the date of this order, to file documentary or other evidence establishing the appropriate amount direct damages in this case. The court will *not* consider any evidence of lost profits, other consequential damages, or punitive damages in this case.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the respective parties or, if represented, their counsel. If no counsel has filed a notice of appearance on behalf of defendants, it is DIRECTED that a copy of this Memorandum and Recommendation be served on defendants. *See* [DE-12] (defendants' address noted in executed summons).

Each party shall have until **September 18, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules); 72.4(b),

E.D.N.C. Any response to objections shall be filed by the **earlier of 7 days from the filing of the objections or September 24, 2026**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 11th day of September, 2026.

Brian S. Meyers
United States Magistrate Judge